UNITED STATES DISTRICT COURT    FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

ZDZISLAW B. KWIATKOWSKI,

                    Plaintiff,

- versus -

POLISH & SLAVIC FEDERAL CREDIT
UNION and ITS BOARD OF DIRECTORS,

                    Defendants.

MEMORANDUM
AND ORDER
11-CV-3947

A P P E A R A N C E S

    ZDZISLAW B. KWIATKOWSKI
        574 Morgan Avenue #2R
        Brooklyn, New York 11222
        *Pro Se Plaintiff*

    MITCHELL POLLACK & ASSOCIATES, PLLC
        150 White Plains Road, Suite 310
        Tarrytown, New York 10591
    By:    Eileen M. Burger
        *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Plaintiff Zdzislaw B. Kwiatkowksi brings this action against the Polish & Slavic Federal Credit Union (the "credit union") and its board of directors, raising numerous claims related to the credit union's refusal to provide him with a business loan and other misconduct. The defendants move to dismiss for lack of jurisdiction and for failure to state a claim, pursuant to Rules 12(b)(1) and 12(b)(6), respectively. For the reasons set forth herein, I grant the motion to dismiss in its entirety.

BACKGROUND

        According to the complaint, whose factual allegations I assume to be true for the purposes of this motion, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (12(b)(6)

challenge); *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (facial 12(b)(1) challenge), and accompanying exhibits, the dispute in this case arises from the following facts:

On September 21, 1993, and April 17, 2000, Kwiatkowski was granted United States patents for a device he invented called the Rainbow-Spectral Display. Compl. ¶ 4. As described by Kwiatkowski at oral argument, the device included a clock and a rainbow display. He planned to open a business to produce and market his invention, but he needed capital. Accordingly, he wrote two letters to the credit union's board of directors in August 2000 in which he encouraged the credit union to work with the Small Business Administration so that it could provide loans to start-up businesses. Compl. ¶ 22 & Exs. A1, A2. The credit union did not do so. Compl. ¶ 22.

Kwiatkowski then applied, on September 10, 2002, to the credit union for a business loan of $550,000. Compl. ¶ 23. His application was denied. Compl. Ex. B1. By letter dated September 11, 2002, Roman Sieczkowski, the Vice President of Lending at the credit union, told Kwiatkowski that the credit union was "unable to accommodate [him] with [his] request for business credit." *Id.* He explained, "We do not offer business loans for the purpose you requested. The only type of business loans offered by our Credit Union are loans secured by multi-family homes that are already constructed." *Id.*

On November 2, 2005, Kwiatkowski submitted to the credit union a second application for a $550,000 business loan. Compl. ¶ 23 & Ex. B2. In a Business Adverse Action Notice dated November 7, 2005, the credit union again denied Kwiatkowski's application. Compl. Ex. B2. As "principal reason(s)" for the denial, the Notice listed "[i]ncome insufficient for amount of credit requested," "[v]alue or type of collateral not sufficient," "[l]ength of time in business," and "[i]nsufficient cash flow." *Id.* The Notice explained that "[i]ntangibles are not

acceptable collateral items," that Kwiatkowski had demonstrated "no history of company income and profit," that a "start up business [entails] high risk," and that the "guarantor does not have enough cash flow." *Id.*

Kwiatkowski responded to the credit union by letter dated November 18, 2005, complaining to Sieczkowski that the credit union "failed to consider the positive merits of [his] business plan and its main product." Compl. Ex. E1. Soon after, he also applied for a $75,000 business line of credit, which was denied by email on January 30, 2006. *See* Compl. Ex. E2. The email provided three reasons for the denial: first, that the credit union "does not offer unsecured business lines of credit" for amounts great than $5,000; second, that Kwiatkowski "d[id] not meet the underwriting or credit requirements necessary to be approved for a loan"; and third, that "a recent review of [Kwiatkowski's] credit history, with [the] Credit Union, disclosed that a Judgment was issued to [the credit union] for an unpaid VISA Account." *Id*.

On May 19, 2010, Kwiatkowski applied once more to the credit union for a business loan, this time in the amount of $650,000. Compl. ¶ 23 & Ex. B3. His request was denied. Compl. Ex. B3. In a Business Adverse Action Notice dated May 21, 2010, the credit union explained that the "principal reason(s)" for its denial of Kwiatkowski's loan application were that "according to [credit union] policy, we do not offer the type of loan requested," the application demonstrated no "gross receipts" or "cash flow," and Kwiatkowski had a "charge off account" with the credit union. *Id.* Kwiatkowski made numerous requests for additional information regarding why his loan application had been denied, but the credit union did not answer his requests. Compl. ¶ 28.

The credit union and its board members also engaged in a series of other acts to which Kwiatkowski objects. The credit union utilized only 12% of its funds to provide only .7%

3

of its members with business credit, Compl. ¶¶ 3, 12, yet it invested over 50% of its assets in speculative ventures, Compl. ¶ 30. This investment strategy ultimately caused losses to credit union members, Compl. ¶ 38, contravened the credit union's bylaws, Compl. ¶ 29, and conflicted with promises made by its board members, Compl. ¶¶ 32, 34.

The credit union also made material omissions related to its investment losses in its Financial Summary Report of March 31, 2011, Compl. ¶ 31, and one board member falsely made a public statement that the credit union held securities guaranteed by the government, Compl. ¶ 33. Furthermore, board members refused to hold special meetings where appropriate, in violation of the credit union's bylaws, Compl. ¶ 8, caused the credit union to engage in business transactions with companies that employed them, Compl. ¶ 10, and "rigg[ed] the so-called 'democratic' process" in order to maintain control over the credit union, *id.*

On August 16, 2011, Kwiatkowski filed this action against the credit union and its board members, alleging (1) national origin discrimination in violation of the Equal Credit Opportunity Act, 15 U.S.C. 1691 *et seq.*; (2) national origin discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*; (3) patent infringement in violation of 35 U.S.C. § 271(b); (4) violations of the Community Reinvestment Act, 12 U.S.C. § 2901 *et seq.*; (5) violations of the Federal Credit Union Act, 12 U.S.C. § 1751 *et seq.*, and implementing regulations; (6) violations of the credit union's bylaws; (7) common law fraud, deceit, and breach of fiduciary duty; (8) violations of 18 U.S.C. § 657; (9) securities fraud in violation of 15 U.S.C. § 78j(b), (t), and 17 C.F.R. 240.10b-5; (10) violations of 13 C.F.R. 120.150(h); (11) violations of 12 C.F.R. § 528.9(b); (12) violations of 12 U.S.C. § 3018(a); and (13) conspiracy to enslave in violation of 42 U.S.C. § 1994. The credit union and its board of directors moved to dismiss and oral argument on the motion was held on December 9, 2011.

DISCUSSION

1. *Standard of Review*

The credit union and its board members move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. In reviewing such a motion, we must assume the truth of all factual allegations and draw all inferences in the light most favorable to the plaintiff. *Bolt Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995). We deny the motion whenever the factual content in the complaint, so viewed, "allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

The defendants also move to dismiss under Federal Rule of Civil Procedure 12(b)(1), making a facial challenge to this Court's jurisdiction. In reviewing a facial jurisdictional challenge -- that is, an objection to the legal sufficiency of plaintiff's jurisdictional allegations as set forth in the complaint -- "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff" and decide the motion based on those facts. *Robinson*, 269 F.3d at 140 (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)) (internal quotation marks omitted).

2. *Discrimination Claims*

Kwiatkowski, who identifies himself as Polish, claims that the credit union discriminated against him when it denied his loan applications on the basis of his national origin. He alleges purposeful discrimination, claiming that his "national origin was a motivating factor, and played an important role in [the credit union's] decision not to approve [his] business loan." Compl. ¶ 41.

The Equal Credit Opportunity Act makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction[,] on the basis of . . . national origin." 15 U.S.C. § 1691(a). Title VI of the Civil Rights Act of 1964 mandates that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Under both Acts, discriminatory animus is an element of a purposeful discrimination claim. *See Thompson v. Marine Midland Bank*, 198 F.3d 235 (2d Cir. 1999); *Lora v. Bd. of Educ. of N.Y.*, 623 F.2d 248, 250 (2d Cir. 1980). Thus to survive a motion to dismiss, the factual allegations in the complaint must allow the Court to draw the reasonable inference that the credit union denied Kwiatkowski's applications for business loans because of, and not simply in spite of, his national origin. *See Iqbal*, 129 S. Ct. at 1949-50. In this analysis we disregard any conclusory statements in the complaint, such as the "formulaic recitation of the elements" of a claim, including the element of intent in a discrimination claim. *See id.* at 1949-51 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

Applying this standard to the allegations here, I conclude that Kwiatkowski's discrimination claims must be dismissed. I disregard his conclusory statement that the credit union was motivated by discriminatory animus, and I find no factual allegations that could reasonably lead me to infer that it was his national origin that drove the credit union to deny his loan applications. Although the factual allegations in the complaint may be consistent with discrimination, "given more likely explanations," such as the credit union's stated policy not to offer substantial business loans without collateral and Kwiatkowski's poor credit history with the

6

credit union, "they do not plausibly establish [discriminatory] purpose." *Id.* at 1951.[1] Indeed, the complaint, to which is attached a 54-page appendix containing numerous documents related to Kwiatkowski's decade-long dispute with the credit union, makes clear that the plaintiff himself regarded his differences with the credit union to relate solely to the merits of his business plan and the credit union's policy regarding the need for collateral.[2]

3.  *Patent Infringement*

Kwiatkowski alleges that the credit union induced the infringement of his patents, in contravention of 35 U.S.C. § 271(b). Section 271(b) creates liability for someone who "actively induces infringement of a patent." One of the elements of a claim under § 271(b) is that the defendant had the "'specific intent to encourage another's infringement.'" *SEB S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d 1360, 1376 (Fed. Cir. 2010) (quoting *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008)). For reasons similar to those discussed above with regard to Kwiatkowski's discrimination claims, the complaint's factual allegations, although potentially consistent with an intent to induce infringement, are more likely explained by lawful motivations. Thus Kwiatkowski fails to plausibly raise the inference that the defendants acted with an unlawful intent.

Furthermore, a § 271(b) claim requires that a third-party, whom the defendant intended to and did induce, actually engaged in direct infringement. *Lucent Techs., Inc. v.*

---

[1] Because I dismiss Kwiatkowki's discrimination claims on this ground, I need not and do not determine whether they could have been dismissed on other grounds.

[2] *See* Compl. Ex. G, Letter from Kwiatkowski to Credit Union's Board of Directors (July 1, 2010) ("Due to the fact that The Board of Directors of the Polish and Slavic Credit Union allegedly enacted a lending policy that is hostile to the sound business practices and that policy keeps human capital hostage to directive that goes agaist [sic] the bylaws of the said institution, I request a document that specifically adresses [sic] the current P&SFCU lending policy in general and with amphasis [sic] on articulations regarding blockade of business start-up loans - who supported this Idea?"); Compl. Ex. E1, Letter from Kwiatkowski to Roman Sieczkowski, Credit Union (Nov. 18, 2005) (complaining of a failure "to consider the positive merits of the business plan and its main product, the Rainbow-Clock," and asserting with emphasis that federal lending regulations provide that inadequate collateral may not be the sole reason for denial of a loan request).

*Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009). Because Kwiatkowski's complaint does not provide any factual information to establish direct infringement of his patent, it is legally insufficient. For these reasons, Kwiatkowski's patent infringement claim is dismissed.

4. *Securities Fraud*

Kwiatkowski alleges that the credit union and its board members committed several acts of securities fraud. Specifically, he argues that they violated 17 C.F.R. § 240.10b-5, which states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Kwiatkowski appears to bring a claim against the defendants under 15 U.S.C. § 78j(b) for their direct violation of § 240.10b-5 and under 15 U.S.C. 78t(a) for secondary liability for a third-party's violation of § 240.10b-5.

In a private action for a violation of § 240.10b-5, "a plaintiff is required to prove, *inter alia*, that he was a buyer or a seller of the securities in question." *United States v. Reifler*, 446 F.3d 65, 135 (2d Cir. 2006) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749 (1975)). Because Kwiatkowski has alleged neither that he was a buyer nor that he was a seller of securities involved in any alleged fraud, he has failed to allege a violation of §

240.10b-5. His claims under § 78j(b) and § 78t(a) necessarily fail as a result, and they are therefore dismissed.

5. *Remaining Federal Claims*

Kwiatkowski brings numerous other claims. He charges that the defendants conspired to enslave him in violation of 42 U.S.C. § 1994; that the credit union failed to meet its obligations under § 2901(3) of the Community Reinvestment Act, 12 U.S.C. § 2901 *et seq*.; that the credit union's "lending standards" were unlawful under 13 C.F.R. § 120.150(h), 12 C.F.R. § 528.9(b), and 12 U.S.C. § 3018(a); and that the credit union violated the Federal Credit Union Act and its regulations as set forth at 12 U.S.C. § 1752(1), 12 C.F.R. §§ 701.2(a), § 703.5, 703.12, and 703.17(a). He also asserts a freestanding claim for violations of the credit union's bylaws. Even assuming a private right of action exists to challenge violations all of these statutory and regulatory provisions[3] and that a common law claim for violations of a credit union's bylaws is legally cognizable, Kwiatkowski's claims must be dismissed because his factual allegations are legally insufficient to state a claim for any such violation.

Kwiatkowski also alleges a claim under 18 U.S.C. § 657. This is a criminal statute, however, and does not create a private civil cause of action. *Fed. Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 138 (4th Cir. 1987). Kwiatkowski's claim under this statute is therefore dismissed.

6. *State Common Law Claims*

Kwiatkowski brings claims for state common law "fraud, deceit and breach of fiduciary duty." However, I have dismissed all of Kwiatkowski's claims arising under federal

---

[3] 12 U.S.C. § 2901(3), the first provision in the Community Reinvestment Act, sets forth a congressional finding; 12 U.S.C. § 1752(1) provides the definition for the term "Federal credit union" in the Federal Credit Union Act. There is no private right of action for a "violation" of a congressional finding or a statutory definition.

law and Kwiatkowski alleges no basis of federal jurisdiction over his state law claims other than supplemental jurisdiction. Although I retain the discretion to exercise supplemental jurisdiction to hear them, I decline to do so. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). They are therefore dismissed.

## CONCLUSION

For the reasons provided, the complaint is dismissed in its entirety.

So ordered.


John Gleeson, U.S.D.J.

Dated: December 12, 2011
      Brooklyn, New York